875 F.2d 30
 David BROOKS, Petitioner-Appellant,
v.
Everett W. JONES, Superintendent of Great Meadows
Correctional Facility, Elizabeth Holtzman, Brooklyn District
Attorney, Honorable Robert Abrams, Attorney General of the
State of New York, Respondents-Appellees.
 No. 1081, Docket 88-2245.
 United States Court of Appeals,
Second Circuit.
 Argued May 2, 1989.
Decided May 12, 1989.
 
 Steven A. Feldman, Hauppauge, N.Y. (Feldman and Feldman, Hauppauge, N.Y., of counsel), for petitioner-appellant.
 Victor Barall, Asst. Dist. Atty., Brooklyn, N.Y. (Elizabeth Holtzman, Dist. Atty., Kings County, Brooklyn, N.Y., Barbara D. Underwood, Shulamit Rosenblum, Asst. Dist. Attys., of counsel), for respondents-appellees.
 Before LUMBARD, FEINBERG and NEWMAN, Circuit Judges.
 LUMBARD, Senior Circuit Judge:
 
 
 1
 David Brooks appeals from an order of the District Court for the Eastern District of New York, Glasser J., dismissing his petition for a writ of habeas corpus on the ground that Brooks had not exhausted his state remedies before filing his petition in federal court. We find that the circumstances surrounding the delay of Brooks's appeal are such that there was little likelihood that his petitioning for a writ of coram nobis in the state courts would have been effective; we therefore reverse the dismissal of Brooks's petition for a writ of habeas corpus and remand for the entry of an order granting the writ if his appeal is not heard within sixty days.
 
 
 2
 Brooks has been incarcerated for over nine years since his arrest in February 1980. He was tried by juries in two trials in the New York Supreme Court, Kings County and was convicted on October 1, 1980 of criminal possession of a weapon in the third degree and on March 3, 1981 of assault in the first degree and criminal possession of a weapon in the second degree. He was sentenced to imprisonment for three and one-half to seven years on the first weapons conviction and concurrent terms of seven and one-half to fifteen years and three and one-half to seven years on the assault conviction and the second weapons conviction, respectively, these latter two sentences to run consecutively with the sentence on the first conviction. Brooks filed a notice of appeal to the Appellate Division, Second Department, immediately after each judgment was entered.
 
 
 3
 It was not until February 7, 1989--almost eight years later--that his most recently assigned counsel finally filed a brief in the consolidated appeals. What happened in the intervening eight years consists of inexcusable neglect by a succession of assigned counsel, who relieved one another but did little else, and of a pervasive want of effective supervision of the process by which the post-conviction review of indigents' rights are vindicated.
 
 
 4
 In view of our disposition of the appeal, there is no need to catalogue in detail the inattention and mismanagement of counsel or the lack of any effective supervision by the Second Department that persisted until the state authorities were prodded into action by Brooks's appeal from Judge Glasser's order upon his grant of a certificate of probable cause on May 20, 1988. Briefly stated, Brooks, proceeding pro se after having successfully petitioned in June 1981 to have Robert A. Strougo, his original assigned counsel, relieved and for leave to proceed pro se or to have new counsel appointed, was unable, after repeated unanswered or tardily and incompletely answered requests, to assemble the complete record for his appeal. Frustrated by this intransigence on the parts of the authorities able to collect certain documents from Strougo, Brooks filed a civil rights action pursuant to 42 U.S.C. Sec. 1983 against Strougo in the Eastern District. The district court dismissed this suit on January 20, 1982, CV-82-0082, because part of the record was mailed to Brooks in prison at that time; we affirmed on March 3, 1983. Brooks then moved on December 30, 1983 for new counsel to be appointed. That motion was granted on August 6, 1984, and Joseph P. Renna was assigned as successor appellate counsel. After having communicated with Brooks immediately after his appointment, Renna neither wrote to nor visited Brooks again. Finally, long after Brooks had filed his pro se habeas corpus petition on June 9, 1986, the Second Department replaced Renna on June 22, 1988 with John F. Clennan, who finally filed a brief over seven months later, on February 7, 1989.
 
 
 5
 The district court dismissed Brooks's pro se petition for habeas corpus on the ground that Brooks had failed to exhaust his state remedies, 28 U.S.C. Sec. 2254(b). Specifically, the court found that he should have petitioned the state court for a writ of error coram nobis before bringing his complaint in the district court. However, when it is perfectly apparent, as it is here, that a prisoner's requests to the state court and requests to state-appointed counsel have been to no avail, we have held that the prisoner need not take additional steps in the state court before he may be heard in the federal courts. Mathis v. Hood, 851 F.2d 612, 614-15 (2d Cir.1988). (We note that Mathis was decided on July 14, 1988, two months after the district court dismissed Brooks's petition on May 16, 1988.)
 
 
 6
 Even were the writ of coram nobis available under New York law to bring this pattern of neglect and delay to the attention of the Appellate Division, an issue upon which we expressed uncertainty in Mathis, we believe here that the "circumstances were such that the use of the writ would have been ineffective to protect [Brooks's] rights in this case." Id. at 614. When the petitioner can substantiate his complaint that his right to appeal is being violated by inattention and time-consuming procedures, to require one more technical step would be to tolerate the frustration of the petitioner's due process rights. Roberson v. State of Connecticut, 501 F.2d 305, 309-310 (2d Cir.1974).
 
 
 7
 We reach our result in this case only upon a consideration of all the relevant factors, which include not only the length of the delay suffered by Brooks, but also the state's lack of a legitimate reason for it, Brooks's repeated assertion of his right to a speedy hearing of his appeal and the prejudice he has suffered while seeking that which is his due. Barker v. Wingo, 407 U.S. 514, 530-33, 92 S.Ct. 2182, 2191-93, 33 L.Ed.2d 101 (1972).
 
 
 8
 It now appears that Brooks's appeal will be heard by the Appellate Division in the near future. We were assured at oral argument by the District Attorney of Kings County, acting through her assistant Victor Barall, that the state will file its brief by May 23 and that the District Attorney would move to expedite the appeal so that it will be heard in June. While we are loath under any circumstances to undertake a review of the complaints Brooks makes regarding his state convictions if the state is about to do so and thus to accord him the relief he seeks, see Wheeler v. Kelly, 639 F.Supp. 1374, 1378 (E.D.N.Y.1986) (federal-state comity is a fifth consideration under Barker ), we believe it imperative to take some action toward the end that the problem of lengthy delays in processing criminal appeals in the New York state courts will be addressed and corrected by those courts.
 
 
 9
 The federal courts should not be the place where incarcerated defendants must go in order to call attention to the neglect they face and the denial of their right to have their appeals heard before they have spent a substantial amount of time in jail. We hope that the time will not come when the situation must be dealt with by prompt action in federal district court whenever it is clear that state prisoners' requests are being ignored. However, the delay such as that suffered by Brooks makes a mockery of the right to appeal and cannot be overlooked.
 
 
 10
 Our decision today--that Brooks need be released only if his appeal is not heard within sixty days--should not encourage the belief that the district court must always stand aside when the state courts finally stir up counsel and schedule the appeal after the prisoner has filed a habeas petition in the district court. While "[w]e are sympathetic to the problems associated with processing the staggering number of indigent appeals in the state system[,] ... federal habeas review [remains] available to protect indigent prisoners' rights to appeal." Mathis, supra, at 615. Surely, indigent defendants need not wait eight years, as Brooks did, before coming to the district court for relief.
 
 
 11
 We reverse the order of the district court and remand with directions that the district court enter an order granting the writ directing the release of the prisoner unless his appeal is heard within sixty days of the entry of our judgment.
 
 
 12
 The mandate will issue forthwith.